HEARD APRIL TERM, 1879.

CASE No. 766.

THE STATE v. LEMUEL DAVIS.

THE STATE, EX REL. BALL, v. L. DAVIS ET AL.

1. A soldier of the United States army, indicted in the state court for murder, and convicted of manslaughter, was granted a new trial and then admitted to bail. Thereupon he filed his petition in the Circuit Court of the United States, praying a removal of his case to that court, and setting forth that the homicide was committed by the accidental discharge of his gun while he was one of a detail to assist a revenue officer of the United States government in arresting the deceased ; a writ of *habeas corpus cum causa* was issued by the United States Circuit judge, and under that process the person of the defendant was taken out of the custody of the state authorities, and turned over to his commanding officer in another state. *Held*, that the sureties on his recognizance were liable for his failure to appear for trial at the succeeding term of the state court.*

2. The jurisdiction of the state court over a prisoner charged with a crime against the laws of the state, is not affected by the removal of the prisoner from the custody of the court by virtue of a writ of *habeas corpus*, issued by a United States Circuit judge under Section 643 of the Revised Statutes of the United States.

3. The writ of *habeas corpus* under this section is not an original, remediable writ, but merely an auxiliary process to bring the person of the petitioner within the jurisdiction of the United States Circuit Court.

4. Every grant to the government of the United States by the constitution is limited to the powers expressed in the terms of such grant, or arising therefrom by necessary implication.

5. Congress cannot confer upon the courts of the United States any jurisdiction or powers not granted by Article III. of the constitution.

6. Congress cannot confer upon the United States courts original jurisdiction of a case involving an offence against the laws of a state, because that the defence interposed depends for its force and effect upon the constitution and laws of the United States.

7. Meaning of the word "case," as used in Article III., Section 2, of the constitution of the United States, with regard to the appellate and original jurisdiction of the courts of the United States.

---

* The defence in this case was not the same as that in *State of Tennessee* v. *Davis*, a decision of the Supreme Court of the United States, rendered after the opinion in this case was filed, and not yet published. It is believed, however, that the decision upon the main point here is not in accord with the conclusions of the majority of the court in the Tennessee case.—REPORTER.

8. The United States courts can have original jurisdiction of cases only where there is a demand of affirmative relief by plaintiff or defendant, based upon the constitution, laws or treaties of the United States.

9. The Circuit Courts of the United States have no appellate jurisdiction over cases properly instituted in the state courts; and cases are removable to the former courts from the latter under the acts of congress, only where they could have been brought, in the first instance, in the courts of the United States.

10. *Martin* v. *Hunter*, 1 *Wheat.* 304, and *Cohens* v. *Virginia*, 6 *Wheat.* 264, considered.

Before MACKEY, J., at Spartanburg, October, 1877.

The case is fully stated in the opinion of the court.

*Mr. L. C. Northrop*, U. S. district attorney, for appellants.

*Mr. B. W. Ball*, solicitor, *contra*.

November 15th, 1879. The opinion of the court was delivered by

WILLARD, C. J. Lemuel Davis was indicted in the Court of General Sessions of Spartanburg for willful murder, and convicted of manslaughter. Subsequently a new trial was granted. Thereupon he filed his petition in the Circuit Court of the United States for the district in which the indictment was pending, alleging, in substance, that he was a soldier in the military service of the United States, and was detailed as one of a guard of United States soldiers to aid a deputy marshal of the United States in making the arrest of Brandy Hall, under a warrant issued by a United States commissioner, for violation of the internal revenue laws as a distiller. The petition then states that while guarding the house in which the deputy marshal was attempting to make the arrest, Hall escaped suddenly from the house, frightening the petitioner's horse, and causing an accidental discharge of his piece, by means of which Hall was mortally wounded and died.

The petition demanded the removal of the cause for trial into the Circuit Court of the United States.

It appears that thereupon a writ of *habeas corpus cum causa* was issued by the United States Circuit Court, and Davis was

2 L

taken out of the custody of the sheriff of Spartanburg and brought before the Circuit Court. It also appears that Davis was discharged from custody under said writ, and removed from the state and placed under the orders of his commanding officer in the State of Pennsylvania.

The Court of General Sessions assumed subsequently to proceed with the cause, and, Davis not appearing, made an order for the forfeiture of a recognizance taken in the Court of General Sessions for his appearance. From this order the sureties on this recognizance have appealed to this court.

The question presented is, whether the Court of General Sessions lost jurisdiction of the case in virtue of the proceeding in the Circuit Court of the United States that resulted in that court obtaining custody of the body of the prisoner under indictment.

It is manifest that a full decision of this question of conflicting jurisdiction here presented will render necessary an inquiry into the constitutional limits of the authority vested in congress touching the matters contained in Section 643 of the Revised Statutes of the United States, under which section the authority under which the removal of the cause was attempted is claimed. It is understood that this question is now before the Supreme Court of the United States in its general aspects, but there is no reason to assume that the decision of that court will reach some of the important features of the present case that to some extent render it independent of any solution that may be given to the question of the constitutional powers of congress.

Without adverting at the present time to the special features of the present case, it is enough to say that the uncertainty that the judgment of the Supreme Court of the United States will dispose of all the matters in controversy, the gravity of the question, involving, as it does, the integrity of the power of administering criminal justice in the courts of the state, and the importance of an early presentation of the questions involved to the court of last resort in all matters that have their origin and force from the constitution and laws of the United States, should the parties so desire, leads us to dispose of the questions at issue without delay.

The first question to be considered is, whether we can look

into the grounds on which the jurisdiction claimed for the United States Circuit Court in this case rests, for the purpose of determining whether that court had constitutional power to proceed in such manner as to divest the Court of General Sessions of its undoubted jurisdiction. If we find ourselves bound to conclude that the effect claimed to be produced upon the jurisdiction of the Court of General Sessions, namely, the destruction or suspension of its jurisdiction, could only be so produced in a case where the Circuit Court of the United States could take jurisdiction, then we would be compelled to look into the constitutional jurisdiction of the Circuit Court in order to make that the measure of the authority of the Court of General Sessions over the case. But if the loss of jurisdiction by the General Sessions is not necessarily dependent on its acquisition by the Circuit Court, then ground may exist for an argument tending to exclude us from looking into the grounds on which the Circuit Court claims jurisdiction. That argument is based on the fact that under Section 643 the petition presenting the grounds for the removal of the cause is required to be presented to the United States Circuit Court, and no means are afforded for bringing such matters to the attention of the state court. Until the passage of the enactments contained in Section 643, the mode of removing causes was by a petition filed in the State Court, and the removal of the cause took place, in form at least, as a voluntary cession of jurisdiction by the state court after looking into the sufficiency of the grounds stated therefor—a mode of procedure that was dictated by a spirit of comity that always accompanies a just understanding of what appertains to the administration of justice. It may be argued that the change in this respect implies an intention on the part of congress of excluding the state courts from judicial knowledge of the ground of the removal, and thus disabling them from discharging the important judicial duty of maintaining jurisdiction in its full exercise. It is fortunate that we are not compelled to examine the considerations arising from the constitution, the comity between judicial bodies, and the practice of well-ordered governments that would be material to the discussion whether such an implication could arise from the language of the act. It is through

the force of a proposition that seems adequate to dispose of the present case that we are relieved from considering that construction of the section in question. This proposition is as follows: That if the courts of the United States' could by no possible means obtain original jurisdiction of the present case, then we are justified in concluding that the authority of the General Sessions remained intact.

As this proposition assumes that the loss of jurisdiction by the General Sessions depends on its acquisition by the United States Circuit Court, it is necessary to inquire whether such is the case. It probably will not be seriously disputed that, ordinarily, this would be the rule, arising from the important principle that no lapse should occur in the administration of justice, and, therefore, the duty of receding from jurisdiction should be commensurate with the right of claiming and exercising it. It may be contended, however, that Section 643 creates an exception to this rule by force of the provisions that enable the United States Circuit Court to take the person of the prisoner in confinement under the process of the state court into its custody by the writ of *habeas corpus cum causa;* that, having done so, the Court of General Sessions having lost control of the prisoner would lose, as incidental thereto, jurisdiction to proceed, and this without regard to the question whether the Circuit Court could or could not take jurisdiction in the case. The correctness of this proposition need not be considered, for it is clearly inapplicable.

If the act had provided that the writ of *habeas corpus* should issue as an original and independent remedy, questions of difficulty might arise as to the constitutional limits of that jurisdiction and as to the effect of custody of persons subjected to such jurisdiction in the proceedings in state courts affecting the person, such as criminal proceedings requiring the presence of the prisoner. Even if the *habeas corpus* under which the petitioner was taken into the custody of the Circuit Court had been such an original remedial writ, yet in the present case no question of the effect of custody held under such writ could become material, for it appears that the prisoner was permitted to pass out of that custody, and, as we are compelled to assume, out of all judicial custody of the courts of the United States into that

of his military commander, acting under military authority alone. In addition to this, the proceedings of the General Sessions brought here by appeal were of such a nature that the presence of the petitioner was not essential to their validity, namely, the forfeiture of his recognizance.

But we are forced to conclude that Section 643 did not intend to authorize the issuing of the writ of *habeas corpus* as an original remedial writ, but merely as process to bring the person in question within the jurisdiction assumed to be competent to take cognizance of the case and the person of the defendant. That this writ was intended as auxiliary to the judicial jurisdiction in aid of which it issued is apparent from the use to which it was put, and by the fact that it was issuable as matter of course by the clerk. Any other construction would open the act to the criticism of attempting to stretch the judicial power of the United States beyond the jurisdiction of its courts, so that it might be able to destroy the jurisdiction of the state courts without being able to replace it by that of the United States courts; "for unless it was intended that the interference of the judicial power of the United States should go to a case beyond the constitutional powers of its courts, there could be no possible motive for giving effect to the writ beyond what might be necessary to subserve the jurisdiction of the court in aid of which it was given. This leads us to conclude that the writ as auxiliary process was limited in its effect by the nature of the constitutional jurisdiction of the Circuit Court."

If, then, congress could not confer jurisdiction on the United States courts to take cognizance of the present case, and the Court of General Sessions could not lose its jurisdiction except where the Circuit Court had authority to take it, it was not material, to enable the General Sessions to discover the state of its control over the case, to know the grounds on which its removal to the United States court was sought, but, on the contrary, it was the duty of that court to proceed with the case.

The question of the constitutional power of the United States Circuit Court to take original jurisdiction, by removal from a state court of a criminal case seeking alone to impose penalties

for the infraction of the laws of a state, is, then, fairly presented, and we are forced to its consideration.

It will not be disputed that the general rule of the constitution of the United States, that all powers not granted expressly or by necessary implication are expressly reserved, is as applicable to grants of judicial powers and jurisdiction as those of any other class. It will be remarked that this reservation is made in express terms, (*Amendment, Art. X.*,) and is not left to result as an implication or a mere consequence from the nature and extent of that which is expressly granted. And this is in harmony with the conclusion that the reasonableness of an implication is not sufficient ground to apply it to the language of the constitution, but that it must have the character of a necessary implication, reached by Justice Story in *Martin* v. *Hunter*, 1 *Wheat.* 304. This distinction is important in a case where the convenience to the government of certain powers is strenuously urged as ground for enlarging the sense of the constitution on the principles of implication. In order to engraft on express terms of the constitution granting powers of government in their nature capable of being exercised by the states previous to the adoption of the constitution, an enlarged sense due to necessary implication, it is requisite to show that the denial of such implication would work a substantial destruction of the powers granted. This cannot be shown by demonstrating merely that such powers can be made more full and satisfactory under the operation of such an implication, for that would be enlarging the sense on the ground of the mere reasonableness and not the necessity of the implication. With this key to the construction of the constitution, derived from the doctrines advanced by the decisions of the Supreme Court of the United States, we will endeavor to arrive at the intention of that instrument as it regards the original jurisdiction of the courts of the United States other than the Supreme Court.

Section 1, Article III., of the constitution, commences with the following language : " The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the congress may, from time to time, ordain and establish." The second section then proceeds to define the limits of that

"judicial power," which, so far as it is applicable to the present case, is accomplished by these words : " The judicial power shall extend to all cases in law and equity arising under this constitution, the laws of the United States and treaties made, or which shall be made under their authority." It will not be disputed that in order to find authority for congress to confer power on the courts of the United States to take original cognizance of a criminal case instituted in a state court under the laws of a state, and solely to enforce penalties for the infraction of such laws, a grant of such legislative power must be made out from the language just quoted, either as inherent in its express terms or arising by necessary implication therefrom.

It is clear that Article III. was intended to limit as well as vest the judicial power of the United States. In the first place, limitation is implied in the words " extend to." In the next place, the object of the constitution was to apportion certain governmental powers between the general and local governments, and such an apportionment is, in its nature, limitative. In the last place, under the operation of the tenth article of amendment, the constitution must receive that construction. That article is as follows : " The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people." This cannot, with any propriety, be read as a new grant to the states or the people of such power as had not been delegated or prohibited by the constitution, for that would assume the existence of a considerable period of time when these powers were either in abeyance or vested somewhere else, which is an assumption inadmissible as inconsistent with the nature of governmental powers. It must be concluded that Article X. was intended as declaratory of a pre-existing intent of the constitution, and that would lead us to construe the constitution precisely as if the tenth article of amendment had been incorporated in it at its first adoption. Reading, then, the constitution with this reservation, it is necessary that the terms of every grant should be construed as the express limitation of such grant where that is reasonably possible. In the present case we have no difficulty in so doing, as the terms employed import limitation.

The next consideration is, that the limitation of the judicial power of the United States affects not only the powers of the courts of the United States, but the power of congress to vest and give exercise to such judicial powers.   Judicial power is not identical with jurisdiction.   It may lie within the power of the legislature, ungranted wholly or in part, and in the latter case the measure of such jurisdiction as may have been lodged would not be the measure of the judicial power that created it.   It may safely be affirmed, however, that when the legislature is restricted in the creation of judicial jurisdiction within certain limits, such limits are the measure of the extent of its judicial power.   The effect of this limitation on the legislative power would present a question of great importance if it had appeared in this case that congress had attempted to destroy the jurisdiction of a state court in a case where it could not open the doors of the United States courts to entertain such case, but, as we have seen, no such intent can be inferred from Section 643.   The only deduction sought to be made for the purposes of the present case from the proposition just considered, is too plain to need discussion, and is this : that congress cannot, by any measure, enlarge the jurisdiction of the courts of the United States beyond the measure of Article III. of the constitution, or grant them powers that are not warranted by such grant of jurisdiction.

It being clear, then, that the grant of judicial power in the constitution to extend to certain prescribed cases, is equivalent to its denial in all other cases, it becomes necessary to define this limit with sufficient exactness to ascertain whether the present case is within or without the scope of that grant.   The first limitation is perceived by comparing the first and second sections of Article III.   In the first section the judicial power of the United States is described by a limitation that has its force from the mode in which that power shall be vested, namely, in the Supreme and inferior courts of the United States.   The second section gives it a further definition as to the subjects that may be brought within it, among which are *cases arising under the constitution, laws and treaties of the United States*.   As congress can only establish the jurisdictions of courts, ordain their functions and delegate their powers, in virtue of the grant of judicial

power, and that grant is required to be exhausted upon the United States courts, it follows that congress cannot mould the jurisdiction, remedial system or process of the state courts, and, therefore, cannot directly cut off that jurisdiction or accomplish that result in any other way than indirectly by means of constitutional jurisdiction conferred on the United States courts. The conclusion just drawn is of importance in fixing the sense of the terms " cases arising under the constitution," &c.

It must be conceded on the ground of indisputable authority, that for the purpose of determining the scope of the appellate power of the Supreme Court of the United States over the final judgments of the highest courts of the states, cases arising under the constitution, laws and treaties, must be understood as embracing all cases in which any question depending on the construction of the constitution, laws and treaties of the United States arises material to the judgment. The further limitation imposed by the original judiciary act, confining that jurisdiction to cases where there has been a denial of some right asserted under the constitution, laws and treaties of the United States, is not contained in the constitution, and may be left out of view.

A superficial view of the question might lead to the conclusion that the same interpretation put upon the words in question for the purpose, of defining the appellate powers of the Supreme Court, ought to prevail, when the question of original jurisdiction comes to be considered. It must be admitted that, as a general rule, words capable of being applied to different classes of subjects should receive the same definition in their application to each class. Allowing the utmost force due to this consideration, it is a rule of uniformity merely, and must not stand in the way of reaching a conclusion, rendered necessary by the nature of the subjects involved.

With a view to an exact understanding of the nature of the present question, a classification of the cases concerned will be serviceable. Three classes are recognized: First, where the cause of action is some claim or demand that claims its origin or force from the constitution, laws or treaties of the United States. As to this class there is no dispute, congress having the undoubted power to extend the original jurisdiction of the United States

courts to embrace all such cases. The second class is where there
is some subject of controversy to which both plaintiff and de-
fendant make title or claim, the plaintiff claiming under the
laws of a state, and the defendant under the constitution, laws or
treaties of the United States, and wherein the defendant may
have affirmative relief. The remaining class consists of cases in
which the defendant makes no affirmative claim, but stands upon
purely defensive ground. The question presented by the present
case belongs to the third class, from the nature of the proceeding,
namely, a criminal prosecution under the laws of a state. Strictly
speaking, we have at present nothing to do with cases of the
second class, but it will be impossible to bring the principles
applicable to the third class into full discussion without involv-
ing considerations bearing directly on the second class.

The distinction shown between cases of the second and third
classes is very clearly pointed out by Chief Justice Marshall in
*Cohens* v. *Virginia*, 6 *Wheat.* 264, although there applied to dis-
tinguish classes of cases capable of being brought up by writ of
error. He there denies that a writ of error brought by a de-
fendant occupying a purely defensive situation, as in a criminal
case, could be regarded as the substance of a suit prosecuted
against a state. The distinction thus pointed out is identical with
that here presented, though employed for a different purpose.

The exact question, then, is, whether a defence interposed to
an indictment under the laws of the state, depending for its force
and effect upon the constitution and laws of the United States,
is a case arising under the constitution and laws of the United
States in the sense of the constitution. This question is not
stated upon the facts disclosed in the petition to the Circuit
Court, because that petition was not by law required to be pre-
sented to the general sessions, and it may be contended that that
court could not properly base its decision as to its jurisdiction on
the terms of that petition—a proposition that need not be con-
sidered under the view of the case we take. It will be observed
that the nature of the defence, as disclosed by the petition, is
materially different from that contemplated by Section 643.
That section, so far as it affects the present case, provides for the
case of a defence by an officer appointed under or acting by the

authority of any revenue law of the United States, or of any person acting under the authority of such officer, whereas the petitioner claims to have been acting for the protection of a United States deputy marshal, under his authority, while in the execution of process of the United States courts. It certainly cannot be claimed that the United States marshal or his deputy is such an officer, or that the authority he exercises under the process of a court can be properly said to be the authority of any revenue law of the United States. Although the revenue law defined the crime, it did not constitute the authority under which the marshal acted. Again, Section 643 covers the case of an " act done under color of his office, or of any such law, or on account of any right, title or authority claimed by any such officer or other person under such law," whereas the defence disclosed by the petition is that of accidental shooting. The present question, in order to avoid all disputable minor points, is put on the broad ground that congress cannot confer on the Circuit Court of the United States original jurisdiction in any such case.

We come now to consider what original jurisdiction the courts of the United States can properly take under that clause of the constitution that extends the judicial power of the United States to, and limits it at, *cases arising under the constitution, laws and treaties.* If we arrive at the conclusion that such original jurisdiction does not embrace the present case, then it will remain to show that the Circuit Court could *only* get possession of the case as part of its original jurisdiction; in other words, that the removal of the cause could not be justified as an exercise of the appellate jurisdiction of the United States courts over cases pending in a state court.

The object of the language under construction was to establish and limit judicial jurisdiction by defining the " cases" to which it should extend. *Cases* are the natural boundary of jurisdiction in one of its directions. In the other direction the character of parties is the boundary. That sense of the word " case" should then be taken as its intended sense that enables it to serve as the boundary of original jurisdiction where that jurisdiction is described by it. The constitution, with a nicety of expression due to the merited influence of the distinguished lawyers who assisted

in its preparation that leaves no doubt as to its intention to use the word *case* in its technical sense, employs that term when defining the limits of jurisdiction by the nature of its subject matter, and applies the term *controversies* where jurisdiction is intended to depend on the character of parties. The instance of "cases affecting ambassadors," &c., is not a departure from the order of expression; on the contrary, the form of the expression opens the inference that it was intended to give this jurisdiction a scope beyond the instances where the ambassador or other public minister is a party in a legal sense, as consisting with the use of the word *cases* instead of *controversies*. More exact and significant language could not have been employed. There is not the slightest doubt that it was intended that the word *case* should receive its definition and sense by means of legal exposition, and not according to any idea popularly attached to the term. Its direct and primary sense is that technical sense in which the law understands it, and if that sense best satisfies the manifest object of the use of the expression it must prevail.

The term case is, according to familiar legal usage, applicable either to a suit or other remedial proceeding in a court of justice, or to matters brought into an appellate court by means of a writ of error and assignment of errors, or other similar proceeding. When used to designate a suit or proceeding in a court of original jurisdiction it embraces the idea of parties and a subject matter in controversy between them, its character and description for jurisdictional purposes being determined by the nature of the demand of the party seeking the court for relief. When applied to a writ of error and assignment of errors, it covers the idea of certain alleged errors in a legal judgment consisting in failure to apply the proper law of the case to its adjudication. Every error assigned is a case in substance and effect, as it would separately and independently support a writ of error as such. It would follow that, in order to determine, for the purpose of appeal, whether a case is one arising under the constitution, laws and treaties of the United States, inquiry would be directed to ascertain whether any of the alleged errors concern propositions of law deriving their force from that constitution or the laws or treaties made under it. If such errors are found, a

case for the appellate jurisdiction of the United States courts appears.

It is otherwise when the question concerns the original jurisdiction. Propositions of law are not in themselves the proper elements of such a case. The leading features of a case for original cognizance are the subject matter and law under which the party coming for relief demands judgment. If that party proves himself entitled to a judgment it is on the strength of the proper law of the case, and this is the law under which his demand had its origin. All other matters are incidental and tend merely to deny that the matter in controversy is subject to the law propounded as the ground of relief. It would follow that a case can be said to arise under the constitution, laws and treaties of the United States only when the law propounded as the ground of demanding judgment has its force under that source of authority. If a defendant cannot claim affirmative relief his position is purely defensive, and the matter of his defence is always regarded as incidental to the main question, and, as such, does not enter into the legal description of the nature of the case. When such a defendant asserts title or claim in himself to defeat that set up by the plaintiff, the whole force of his defence is to negative the grounds on which the plaintiff demands judgment, each defensive ground not amounting to the introduction of a new and counter-cause of action. Where the defendant is entitled to affirmative relief, his matter of defence assumes the form of a cause of action. In that case considerations of a different character would present themselves which cannot properly be discussed in the present case, as it does not possess that feature.

In view of these obvious distinctions, it ought to be concluded that when the constitution used the terms in question, that it was intended that when the words " cases arising," &c., were resorted to for the purpose of fixing original jurisdiction, they should be taken in the sense appropriate to that purpose; and when as the test of appellate jurisdiction, they should be read in a manner agreeable to the idea of such jurisdiction. To assume the contrary is to imply that the framers of the constitution did not understand the differences between the various subjects to which

their language might be applied and their proper application according to the nature of such subject. We must then look for that sense which is agreeable to the nature of original jurisdiction.

It is of the nature of original jurisdiction to attach to a case or to refuse to attach, according to the statement made by the party who is actor in the court, by whatever name he may be called. It is he who moves the court for relief who has a right to demand that the powers of the court shall be exercised in his behalf, if the nature of the case as disclosed by his pleadings warrant it. If it cannot attach at that stage of the proceeding, it can never attach, and, as a general rule, if it then attaches it cannot be lost by any means. There are cases where a general jurisdiction may be ousted in favor of an exclusive special jurisdiction, and there are many cases in which a special and limited jurisdiction may be ousted in favor of one that is general; but these are exceptional cases and leave the general proposition untouched that, for the purpose of determining what is a case for the exercise of original jurisdiction, the statements and allegations of the actor in the case must be looked to as the proper means of determining the existence of jurisdiction. That the framers of the constitution should have intended that the practice in exceptional cases, and not the great general rules established by the experience of mankind, should become the principle of its construction and form the basis for distributing the immense jurisdiction cognizable in the courts of the United States and the various states between those courts, is incredible. We must conclude that they intended that the customary rules should be observed in applying their words giving jurisdiction to the various subjects to which they are properly applicable.

The question, then, comes to this: The constitution assumes to assign certain cases to certain jurisdictions. It assumes that what is meant by a *case* is well understood and attempts no new definition of the term. It signifies no intention to change any of the features of the great remedial system of the common law and equity, and yet an effect is claimed for its words that subvert fundamental principles of those systems. Nothing is better understood than that the actor should choose his forum, when

there are courts of concurrent jurisdiction, resting as it does on the rational ground that the actor being compelled to build his case, the defendant being concerned only to pull it down, he should have that compensating advantage. It is proposed to take that right from the plaintiff and give it to any defendant who is willing to allege, whether true or false, a defence having its force under the constitution and laws of the United States. To accomplish this end it is necessary to affirm that it was the intention of the constitution that, contrary to the spirit of our judicial system, neither the fact of jurisdiction rightfully acquired nor the nature of the issues as a whole should be decisive of the question of the right to retain that jurisdiction, but that any question of a certain class incidentally arising should control the jurisdiction and accomplish the novelty of stripping a court of general jurisdiction, of authority once rightfully acquired. As long as the question of transfer concerned only the cases where jurisdiction depended on the character of the parties, such an anomaly did not arise, because that effect of personal privilege in divesting jurisdiction otherwise rightfully acquired was not unknown to the common law. In a word, a new and hitherto unknown jurisdiction, to which the designation of *shifting* would not be inappropriate, is to be regarded as of so much importance as to turn the sense of the constitution aside from the natural significance of its language. To repose the administration of justice on the shifting sands of such an unsubstantial system is to wreck it, and to render possible the recurrence of the spectacle afforded by this case ; the judiciary of the United States, stretching out its arms and taking from the criminal courts of a state in times of peace, one of its soldiers indicted for murder, and returning him to the ranks of the army without a trial. It would be a blow inflicted on the principles of permanent order that could not be justified by any temporary necessity, however urgent.

It must be concluded, then, that what the constitution meant by a case for the purpose of determining a question of original jurisdiction is the statement of the claim or demand made by a party prosecuting another in a court. This would apply to the case made by an indictment. It is easy, then, to apply the mode

of distinguishing such cases adopted by the constitution, namely, the fact of their origin under the constitution, laws or treaties of the United States.

It will be found that the foregoing construction is in full harmony with the established doctrines as to the extent of the appellate jurisdiction of the Supreme Court of the United States . in case of appeals from the final judgments of the highest courts of the states.

It becomes, necessary, at this point, to examine the actual determinations and the doctrines advanced in the decisions of the Supreme Court of the United States affecting the present question, and in the course of such examination the additional question will come up for consideration, whether, when the Circuit Court of the United States takes jurisdiction through the removal of causes before final judgment, such jurisdiction appertains to that conferred upon them as original or to that given as appellate jurisdiction.

*Martin* v. *Hunter,* 1 *Wheat.* 304. In that case an appeal had been taken from the Court of Appeals of Virginia to the United States Supreme Court, and judgment therein rendered and a mandate issued accordingly to the Court of Appeals. The court refused to obey such mandate, on the ground that the United States Supreme Court had not jurisdiction of appeals from a state court, and gave judgment contrary to such mandate. That judgment was appealed to the Supreme Court, and reversed. The question of the right of the Supreme Court to exercise the jurisdiction conferred by Section 25 of the old judiciary act was the only one actually decided, but the opinion of the eminent jurist who rendered the judgment of the court discusses many questions that have an argumentative relation to the question before the court, and are of great interest in view of the distinguished source from which they come and the occasion that called them forth. The basis of the argument in behalf of the jurisdiction claimed by the Supreme Court was the fundamental proposition that congress was bound, under the constitution, to vest the whole judicial power of the United States either as original or appellate jurisdiction. He held that that jurisdiction properly extended in some form to all cases in which questions

arose under the constitution, laws and treaties of the United States, either directly or indirectly. The existence of an exclusive jurisdiction in the state courts of cases that might involve questions arising under the constitution, laws and treaties of the United States is recognized, and the argument is that as such questions could only be reached through the appellate power, that power must be deemed to be granted as constituting part of the judicial power of the United States.

The argument just stated contains the proposition that within the class of cases described by the constitution as arising under the constitution, laws and treaties of the United States there are two subordinate classes, namely, cases within the original jurisdiction and cases without that jurisdiction, that can only be reached by the appellate jurisdiction. Elsewhere the opinion points out a still further classification of causes within the original jurisdiction of the United States courts, namely, cases for the exclusive cognizance of those courts, and those of which the United States courts and the state courts may have concurrent jurisdiction.

The opinion places the criminal jurisdiction of the United States and the admiralty and maritime jurisdiction in the class exclusive in the United States courts, and finally says : " It can only be in those cases where, previous to the constitution, state tribunals possessed jurisdiction independent of national authority that they can now constitutionally exercise a concurrent jurisdiction."

To arrive at the means of harmonizing these various propositions it is necessary to bear in mind that the constitution places in one class three subjects of jurisdiction as to which jurisdiction is conferred by the same words. The primary inference would be that if one is the subject of exclusive jurisdiction, all of that class would be so subject. These classes are, first, " cases in law and equity arising under the constitution, the laws of the United States, and treaties made, or which shall be made, under their authority ;" second, " cases affecting ambassadors, other public ministers and consuls ;" and, third, " cases of admiralty and maritime jurisdiction." We have the authority of the distinguished jurist whose opinion we are considering, that the grant,

as it regards cases in the admiralty and maritime jurisdiction, is of exclusive cognizance in the United States courts. We have also his authority to the same effect as it regards one of the class of cases arising under the constitution, laws and treaties of the United States, namely, criminal prosecutions under the laws of the United States. This last statement requires certification. The conclusion that jurisdiction in criminal cases, under the laws of the United States, cannot be conferred on the state courts, must depend on the principle that cases originating within the "judicial power" of the United States cannot be placed beyond that judicial power for adjudication, as that power is exclusively vested in the United States courts. The constitution draws no distinction between civil and criminal causes, as it regards the matter of jurisdiction, so that it must be controlled by provisions common to both civil and criminal cases. It follows that the criminal jurisdiction of the United States is created and vested under the clause that relates to cases arising under the constitution and laws. We have here authority for the proposition that some of the cases that are described as arising under the constitution and laws of the United States become, under the grant relating to such cases, the subject of exclusive jurisdiction in the United States courts. We have also the same authority for the proposition that others of the same class may be the subject of concurrent jurisdiction in the courts of the United States and the states. The last class is described as including those cases "where, previous to the constitution, state tribunals possessed jurisdiction independently of national authority." The learned judge is here adverting to a distinction between cases arising under the constitution, &c., the effect of the application of which is to consign part to the exclusive jurisdiction of the United States courts and part to the concurrent jurisdiction of the United States and the state courts. Here, then, is a distinct instance where words conveying jurisdiction over a class of subjects must yield different senses when the nature of the different subjects demand it. I shall endeavor to show the ground of this distinction.

Every action capable of being prosecuted must be constituted as such by some law. The law may be the law of a state or of

the United States. In the latter case the *action* may be said to have its origin under the laws of the United States, and, whatever may be its nature, it has the same character, as far as jurisdiction is concerned, as a criminal cause under the laws of the United States. It is very clear that the class of cases described as arising under the constitution and laws of the United States has a much more extended range than that just indicated. A right of action may exist in virtue of our law, and the subject-matter of the action may arise out of an entirely distinct law. An action upon a contract made subject to the law of a foreign state illustrates the distinction. An action in a state court for the recovery of land claimed under title arising out of the laws of the United States is another instance. The right by which one clothed with the title to land seeks to be put in possession may exist under a state law and yet the title depend on the force and effect of the laws of the United States. When the right of action arises out of the laws of the United States, as we have seen, the jurisdiction of the United States courts is exclusive. This depends on the principle that congress is required to vest the entire judicial power of the United States in its own courts; it cannot delegate that judicial power to the state courts, nor can the latter exercise it without delegation. It follows that a right of action, having its origin as such, under the laws of the United States, appertains to its judicial power and cannot be separated from it. The class of cases recognized by the opinion under consideration as those in which the courts of the United States and those of the states have concurrent jurisdiction must, then, be of those in which the right of action has arisen under the laws of a state, yet the claim or demand presented by means of such action has arisen under the constitution and laws of the United States. It is clear that it was not intended to be held that every case cognizable by a state before the adoption of the constitution of the United States is the subject of concurrent jurisdiction, for that would include the admiralty and maritime jurisdiction, which is held to be exclusive. The distinction must then be found in the nature of the cases described as *arising under the constitution,* &c., and that pointed out is the only one that appears to meet this case.

When it is remembered that the learned judge is here discussing the question of original jurisdiction, it will become manifest that he construed the words of the constitution in extending the original jurisdiction of the United States courts only to cases where the title, claim or demand sued upon has arisen under the constitution, laws and treaties of the United States. This is obvious, both from the nature of the conclusion and from the necessary meaning of other expressions in the opinion that will be hereafter considered.

It must be conceded that wherever concurrent original jurisdiction exists between the courts of the states and of the United States, congress may make that jurisdiction exclusive in the United States courts. At all events that proposition is fundamental to the appellant's case, for the whole power of removal, as between courts of concurrent jurisdiction, rests upon that principle. If, then, the original jurisdiction of the United States may extend to any case in which a federal question arises incidentally or collaterally, the exclusive jurisdiction of the United States courts may be extended thus far, so that the moment that a federal question is presented in a state court it would lose its jurisdiction, without regard to whether provision was or was not made to remove such cause to the United States courts. If such a doctrine should be established, the state judicial systems are practically at an end; or if they continue to exist for any useful purpose and with any dignity and authority, it is not because they are secure under the constitution, but because congress sees fit to spare them. Such a consequence cannot have been within the intention, or even within the contemplation, of the eminent jurist whose views we are considering. He was too near to the times and too much under the influence of the opinions that embodied in the constitution the great principle of placing the local governments and the general government as mutual checks upon each other, to make this instrument the means of destroying the efficiency of that balance.

This view of the authority quoted prepares us to understand what is stated in another part of the opinion in these words: "It must, therefore, be concluded that the constitution not only contemplated but meant to provide for cases within the scope of the

federal powers of the United States, which might yet depend before state tribunals. It was foreseen that in the exercise of their ordinary jurisdiction state courts would incidentally take cognizance of cases arising under the constitution, the laws and the treaties of the United States. Yet, to all these cases the judicial power, by the very terms of the constitution, is to extend. It cannot extend by original jurisdiction if that has already rightfully and exclusively attached in the state courts, which, as has been already shown, may occur; it must, therefore, extend by appellate jurisdiction or not at all."

Here it is distinctly conceded that an extent may be given to the appellate powers of the United States courts that cannot be given to the original jurisdiction of those courts—a conclusion that necessarily involves the proposition that the words "arising under the constitution," &c., are to receive a somewhat different construction when applied to define original jurisdiction than when applicable to appellate jurisdiction. The instance cited as at least one of the causes giving rise to the conclusion of the opinion in this respect, is the circumstance of a state court obtaining possession of a federal question "incidentally," showing that it was in the mind of the learned judge that original jurisdiction could not extend to such cases. The argument is based on the *constitutional* inability of the original jurisdiction to reach all cases within the judicial power, for it is the intention of the constitution that is made the argument in behalf of the appellate power. Comparing the citation last made with those previously made, the reference is irresistible that the class of cases to which the original jurisdiction cannot extend, is that class where the federal question comes in "incidentally." Coming in *incidentally* means, beyond doubt, coming in otherwise than as the foundation of the right put in suit by the action. This is not only the usual sense of the term, but is necessary to complete the view of the opinion. It first traces the lines of the original jurisdiction, both exclusive and concurrent, in order to find a class that falls outside of such line, and on that class bases the argument for the extended appellate power of the United States courts.

We come now to a question that appears at first sight to be put in doubt by the views of this eminent authority. That doubt

will, however, disappear on a close examination of the opinion. The language of the opinion involves the proposition that the right of appeal from the state courts stands upon the same ground of constitutional authority with the right to remove causes from the state to the federal courts. He says: "This power of removal is not to be found in express terms in any part of the constitution. If it be given, it is only by implication as a power necessary to carry into effect some express power." He compares this right of removal with that existing in the courts of common law, and regards the two as identical in nature. He says that this right of removal "is always deemed, in both cases, an exercise of appellate jurisdiction and not of original jurisdiction." He concludes that the right of removal is embraced in the grant of appellate power, and is one of the modes in which it may be exercised, all modes being open under the grant of judicial power. He holds that, as appertaining to the appellate power, it may be exercised before as well as after judgment, on the ground that congress may authorize appeals from interlocutory judgments.

It must be conceded that if the right of removing causes from a state to a federal court is derived from the right to establish appellate jurisdiction, then that power is commensurate with the appellate power of the Supreme Court over causes pending in a state court. That that power has been conclusively shown by the decisions of the Supreme Court, and is established by law under the constitution, cannot be disputed. As such it embraces all cases in which any question arising under the constitution, laws and treaties of the United States arises incidentally and is material to the judgment. It is at present limited to cases where a decision has been made in effect denying some right claimed under the federal law, but that limitation is imposed by congress and not by the constitution, and may be removed by the same authority that gave it existence. Such a conclusion would involve the practical absorption and destruction of the judicial systems of the states. When it is considered that it is within the constitutional power of congress to affect the great mass of, if not all, transactions and contracts by some right, having its origin under the laws of the United States, especially

under its power to regulate commerce between the states, to levy duties, imposts and excises, to coin money and regulate the value thereof, and fix the standards of weights and measures, it is obvious that such a construction of the constitution aims a blow at the balance of power, local and general, that distinguishes this republic from other western republics, and was thought to promise to preserve it from that fate which the lessons of history seem to mark out for unbalanced republics. It cannot for a moment be supposed that this sound lawyer and able statesman contemplated any such possibility, living, as he did, in the midst of the men and institutions that created the constitution. It is true that expanding a system of government through implications drawn from the text of a written constitution, is the work of lawyers and not necessarily of statesmen, but we know that the eminent lawyers of that day were grounded in the sound principles of government, not from the teachings of schools of philosophy, but from the sober experiences of events that put in peril all social and political rights.

It should be remembered that the idea of employing the power of congress to remove from the state to the federal courts causes there pending, on the ground of their involving incidentally federal questions, had not, at that time, been entertained in any legislation by congress. That Judge Story did not conceive the possibility of its application to any such purpose, is apparent from the nature of the argument by which he sustained the appellate jurisdiction of the court on argument that rested on the incapacity of drawing within the original jurisdiction of the United States courts cases where state jurisdiction had "rightfully and exclusively" attached. That he had in mind a much more limited idea of *removal* than that which would justify a court of the United States in taking a case out of a state court prior to any judgment or even interlocutory order therein, and proceed to hear and determine and render an original judgment therein, is evident from language that has already been referred to. He instances the right of removal before judgment as dependent on the ground that appellate power may extend to the revision of an interlocutory as a final judgment. This shows that he had in mind that removal of a cause which is, in sub-

stance and effect, an appeal, and presupposes a judgment or order as the subject of revision under that appeal. Again, he compares that mode of removal to certain modes prevailing at common law. The writ of *certiorari* is doubtless the remedy at common law that he had chiefly in view as a type of a class. That writ is undoubtedly a means of a limited character of revision. At common law that writ did not open the case for an original judgment in the court to which it was returned. There is a statute *certiorari* sometimes allowed to remove causes from an inferior court of appeal or limited jurisdiction that admits of an original hearing and judgment in the court to which it is returned; but there the writ is merely process incidental to an appeal, and, as such, is unknown to the common law, and only issues after a judgment below. It is easy to conclude that what was in view was something totally different from the removal of causes under Section 643, but it is not clear what was the precise idea here attached to the right of removal.

To say that it is the same in substance to take a cause before verdict or judgment and remove it into a court other than that in which it originated, and there try and hear the issue involved and render an original judgment and to take it by way of appeal after judgment, even though in the latter case the court may try the case *de novo,* is the obliteration of simple and clear legal distinctions. Such an intention ought not to be imputed to that distinguished jurist, except upon the strongest grounds of proof, and no such proofs are afforded by the opinion in question.

Aside from the importance that is given to the question by the obscure reference to it made by Judge Story, it is too plain and obvious to admit of discussion. The object of removal to the Circuit Court, under the judiciary act and its amendments, is to prevent the state court from trying or hearing the cause if a party having the right to remove so desires, and not for any purpose of revision. This is evident from the fact that the removal, if made at all, must be made before trial or hearing. If the object in view was the exercise of appellate power, the fact of a trial or hearing would constitute the strongest claim for the exercise of such appellate power. It must be concluded that the removal of causes to the Circuit Court is intended as a means of

obtaining original jurisdiction, and may take place in certain cases where the state court is excluded from such jurisdiction by the exclusive character of the jurisdiction of the United States courts, or where such courts have concurrent jurisdiction at the election of certain parties after suit brought to transfer the cause to the United States courts. If this is the true view, then the question in regard to the right to remove any particular case is whether it could have been brought in the first instance in the United States courts, and that would exclude at least criminal cases prosecuted under the laws of a state.

*Cohens* v. *Virginia,* 6 *Wheat.* 264. The argument of Chief Justice Marshall in that case is in substantial accordance with that in *Martin* v. *Hunter.* The broad definition that is given to the grant of jurisdiction in cases arising under the constitution, laws and treaties of the United States, is expressive of all that may be brought into the jurisdiction of the United States courts by means of their combined original and appellate jurisdiction. That the latter has the largest scope is conceded in this case as it was in *Martin* v. *Hunter.* The question of the appellate power was the only one before the court, and, therefore, the largest possible definition of the jurisdiction granted was pertinent to the case. What has been already said is applicable to *Cohens* v. *Virginia* and need not be repeated.

It admits of no doubt, on comparing the provisions of the original judiciary act with the reasonings on which the limits of the appellate jurisdiction of the Supreme Court, was settled, that the prevailing idea was that when questions arising under federal laws were presented incidentally in causes properly brought originally in the state courts, the final adjudication of such questions in the United States courts should be accomplished through the exercise of the appellate power of the Supreme Court, and not by the removal of such causes for original adjudication in the United States courts. To this idea the administration of justice was brought contemporaneously almost with the constitution itself and was maintained for nearly a century. It is an instance of contemporaneous exposition reinforced by a settled system of administration lasting nearly a century. It is now proposed to

put new readings on the constitution to meet emergencies arising from public debt incurred in a great war. We may well pause to inquire whether the emergency is of sufficient magnitude, and sufficiently likely to occur in the future to warrant a readjustment of the federal powers of the government based on more critical views of the meaning of the constitution than those who framed it were enabled to take, although they inaugurated the government under circumstances in many respects similar to the present, at the close of an exhausting war and in the presence of public debt and the necessity for extraordinary revenues. The infant government struggled into a state of organization and self-support without disturbing the balance between the general and local administrations, and we may well inquire whether their ideas of government may not be adequate to any present or prospective emergency. These considerations have no place here as suggesting a question of policy, with which the courts have nothing to do, but as the means of estimating the degree of force that should be accredited to the practical exposition of the constitution embodied in the statutes of that time and the practice of the courts thereunder. If there is a disputable sense involved in the language of the constitution, that sense that has been thus practically embodied should be preferred.

The constitution confers upon the Supreme Court, under its appellate jurisdiction, power to determine upon appeal matters both of fact and law. Why this power has not been fully put in exercise it is unimportant to inquire. The grant stands on the face of the constitution, and, under it, it is not possible, in a legal sense, that a state court may abuse its judicial power without a corrective being applied through this appellate power. It is not necessary to trace all the consequences of this provision. Its insertion in the constitution is best accounted for on the idea that that appellate power should be the means of preventing any maladministration on the part of the state judiciary, by means that leave untouched the integrity of the system of state administration. Then the argument from necessity falls to the ground, and that from reason, authority and the practice of the government remains unimpeached.

It follows that no authority existed for the removal of the cause to the United States Circuit Court; therefore the jurisdiction of the General Sessions remains intact and its proceedings must be sustained.

An order affirming the judgment has been already entered.

Judgment affirmed.

McIVER and HASKELL, A. J.'s, concurred.